MORGAN, LEWIS & BOCKIUS LLP
Arjun P. Rao, Bar No. 265347
Marcos Sasso, Bar No. 228905
2049 Century Park East
Suite 700
Los Angeles, CA 90067-3109
Tel: +1.310.907.1000
Fax: +1.310.907.1001
arjun.rao@morganlewis.com
marcos.sasso@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Christina Chen, Bar No. 294921
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: +1.415.442.1000
Fax: +1.415.442.1001
christina.chen@morganlewis.com

Attorneys for Defendant
CITIBANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAGS GLOBAL CAPITAL LLC, a California limited liability company, and MOZAFAR MAGHSOUDNIA,<br><br>Plaintiffs,<br><br>vs.<br><br>CITIBANK, N.A., a national association, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 5:25-cv-06526-NW<br><br>Assigned to Honorable Noel Wise<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT CITIBANK, N.A. TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 21, 2026<br>Time: 9:00 am<br>Dept.: Courtroom 3<br><br>Complaint Filed: August 1, 2025<br>Trial Date: None set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, THE CLERK OF THE COURT, AND THE HONORABLE COURT:**

**PLEASE TAKE NOTICE** that on January 21, 2026 at 9:00 am in Courtroom 3 of the above-captioned court, Defendant Citibank, N.A. ("Citi") will, and hereby does, move the Court pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the Complaint, and each cause of action therein, filed by Plaintiffs Mags Global Capital LLC, and Mozafar Maghsoudnia ("Plaintiffs"), against Citi on the following grounds: (i.) this Court lacks personal jurisdiction over Citi, which is a national banking association headquartered in South Dakota, and is not "at home" in California merely because it operates branch locations in California, nor can Plaintiffs-initiated wire transfers subject it to jurisdiction; (ii.) Plaintiffs' claim for violation of California Commercial Code Section 11207 fails because Plaintiffs lack privity with Citi, as Plaintiffs as an originator cannot sue Citi as the beneficiary bank; (iii.) Citi is allowed to rely on the safe harbor provision of the statute, and Plaintiffs fail to plead facts that Citi had actual knowledge of any discrepancy between account names or numbers at the time of payment; (iv.) courts have consistently held that, as between a defendant bank and plaintiff businesses that fall victim to a business email compromise scam, the business is in the best position to safeguard against fraud and bears the loss; and (v.) Plaintiffs' declaratory relief claim is entirely derivative of their Section 11207 claim, and concerns past conduct rather than asking the court for prospective relief to declare the parties' future rights, and thus this claim also fails as a matter of law. Because any proposed amendment of Plaintiffs' Complaint would be futile, leave to amend should be denied.

This Motion will be based on this Notice of Motion; the attached Memorandum of Points and Authorities; the declaration of Christina Chen in support of the Motion; the pleadings, records, and files in this action; and upon such

further oral or documentary evidence and argument as may be presented at or before the hearing.

Dated: October 10, 2025

MORGAN, LEWIS & BOCKIUS LLP

By */s/ Arjun Rao*
Arjun P. Rao
Marcos Sasso
Christina Chen

Attorneys for Defendant
CITIBANK, N.A.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ALLEGATIONS OF THE COMPLAINT ..... 3
A. Plaintiffs' Wire Transfers to the Transpo Express Account ..... 3
B. Plaintiffs' Allegation of Actual Knowledge Are Solely Based on Public Statements and Unverified News Articles ..... 4
III. LEGAL STANDARDS ..... 5
A. Dismissal for Lack of Personal Jurisdiction ..... 5
B. Dismissal for Failure to State a Claim ..... 5
IV. ARGUMENT ..... 6
A. This Court Lacks Personal Jurisdiction Over Citi In this Matter. ..... 6
1. Citi Is Not Subject To General Jurisdiction In California. ..... 7
2. Because Citi Did Not Direct Any Activity Towards California, It Is Also Not Subject To Specific Jurisdiction. ..... 9
B. The Complaint Fails to State a Claim for Violation of Division 11 ..... 10
1. Article 4A Is A Comprehensive Scheme Which Was Adopted To Allocate Risk Involving Funds Transfers. ..... 11
2. An Originator Cannot Sue The Beneficiary's Bank. ..... 11
3. Wires Are Permitted To Be Paid Based on Account Number. ..... 14
4. Plaintiffs Fail To Allege That Citi Had Actual Knowledge. ..... 16
5. Any Allegations About Obligations Pursuant to the Bank Secrecy Act, and Associated Internal Bank Policies and Procedures, Are Insufficient to Impute Actual Knowledge. ..... 19
6. Courts Are Clear That A Business That Fails To Detect A BEC Cannot Shift Its Loss To The Bank That Merely Processed The Businesses' Request. ..... 20
C. Plaintiffs Fail to State a Claim for Declaratory Relief ..... 23
D. The Complaint Should Be Dismissed Without Leave to Amend ..... 25
V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abe v. AFCH, Inc., No. 2:20-cv-08193-ODW-PVCx, 2021 WL 2209309 (C.D. Cal. June 1, 2021) ..... 18

ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496 (2014) ..... 10

AlphaVets, Inc. v. JPMorgan Chase Bank, N.A., 651 F. Supp. 3d 810 (D.S.C. 2023) ..... 23

AmpliTech Grp., Inc. v. Truist Bank, 746 F. Supp. 3d 1384 (S.D. Fla. 2024) ..... 14

Approved Mortg. Corp. v. Truist Bank, 106 F.4th 582 (7th Cir. 2024) ..... 13

Arrow Truck Sales, Inc. v. Top Quality Truck & Equip., Inc., No. 8:14-CV-2052-T-TGW, 2015 WL 4936272 (M.D. Fla. Aug. 18, 2015) ..... 21

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..... 5, 6

Ball v. FleetBoston Fin. Corp., 164 Cal. App. 4th 794 (2008) ..... 25

Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082 (9th Cir. 2000) ..... 9

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..... 5, 6

Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ..... 25

Boschetto v. Hansing, 539 F.3d 1011 (9th Cir. 2008) ..... 6

Cap. Express Lines, Inc. v. JPMorgan Chase Bank, N.A., No. 2:24-CV-01639-DAD-DB, 2025 WL 2307899 (E.D. Cal. Aug. 11, 2025) .......... 22

Chan v. Society Expeditions, 39 F.3d 1398 (9th Cir. 1994) .......... 5

Chino Com. Bank, N.A. v. Peters, 190 Cal. App. 4th 1163 (2010) .......... 15

Daimler AG v. Bauman, 571 U.S. 117 (2014) .......... 5, 7, 8

Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736 (S.D.N.Y. 2004) .......... 8

Dow Chemical Co. v. Calderon, 422 F.3d 827 (9th Cir. 2005) .......... 5

Dtex, LLC v. BBVA Bancomer, S.A., 405 F. Supp. 2d 639 (D.S.C. 2005), aff'd sub nom. Dtex LLC v. BBVA Bancomer, 214 F. App'x 286 (4th Cir. 2007) .......... 8, 10

First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank, 215 F.3d 1147 (10th Cir. 2000) .......... 17

Fox Paine & Co., LLC v. Twin City Fire Ins. Co., 104 Cal. App. 5th 1034 (2024) .......... 23, 24

Gafcon, Inc. v. Ponsor & Assocs., 98 Cal. App. 4th 1388 (2002) .......... 24

Gen. of Am. Ins. Co. v. Lilly, 258 Cal. App. 2d 465 (Ct. App. 1968) .......... 23

Girard v. Miller, 214 Cal. App. 2d 266 (Ct. App. 1963) .......... 24

Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101 (9th Cir. 2020) .......... 6

GN Pro Grp., LLC v. Well Done ASAP, LLC, 764 F. Supp. 3d 757 (N.D. Ill. 2025) .......... 19

Grain Traders, Inc. v. Citibank, N.A.,
160 F.3d 97 (2d Cir. 1998) .......... 11, 13, 14, 15

Grand Bayman Belize, Ltd. v. Wells Fargo & Co.,
514 F. Supp. 3d 1188 (C.D. Cal. 2021) .......... 14, 17

Gucci Am., Inc. v. Weixing Li,
768 F.3d 122 (2d Cir. 2014) .......... 7

Harborview Cap. Partners, LLC v. Cross River Bank,
600 F. Supp. 3d 485 (D.N.J. 2022) .......... 10

Haring v. Wells Fargo Bank N.A.,
No. C 18-3310, 2018 WL 10471109 (N.D. Cal. Oct. 17, 2018) .......... 7

Helicopteros Nacionales de Colombia S.A. v. Hall,
466 U.S. 408 (1984) .......... 6

Int'l Shoe Co. v. Washington,
326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .......... 6

Jetcrete N. Am. LP v. Austin Truck & Equip., Ltd.,
484 F. Supp. 3d 915 (D. Nev. 2020) .......... 21

Jolley v. Chase Home Fin.,
LLC, 213 Cal. App. 4th 872 (2013) .......... 23, 25

Jones v. Bock,
549 U.S. 199 (2007) .......... 5

Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n,
688 F. Supp. 3d 608 (N.D. Ohio 2023), aff'd sub nom. Kent Grp. Partners, LLC v. Citizens Bank, NA, No. 23-3743, 2024 WL 945239 (6th Cir. Mar. 5, 2024) .......... 17

Langston & Langston, PLLC v. SunTrust Bank,
480 F. Supp. 3d 737 (S.D. Miss. 2020) .......... 18

Legends Title, LLC v. Cap. One, Nat'l Ass'n,
659 F. Supp. 3d 637 (D. Md. 2023) .......... 8

Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
No. 20-cv-8231, 2021 WL 4782278 (C.D. Cal. Aug. 4, 2021) .......... 19

Meridian Growers Processing, Inc. v. J.P. Morgan Chase Bank, N.A., No. 1:24-CV-00781-KES-EPG, 2024 WL 4333146 (E.D. Cal. Sept. 27, 2024) .......... 19, 20

Metro Denver Title, LLC v. JPMorgan Chase Bank, N.A., No. 21-cv-02705-RMR-SKC, 2022 WL 17547943 (D. Colo. Aug. 16, 2022), report and recommendation adopted sub nom. Metro Denver Title LLC v. JPMorgan Chase Bank, NA, No. 21-cv-02705-RMR-SKC, 2022 WL 17547945 (D. Colo. Sept. 1, 2022) .......... 17

Moledina v. Marriott International, Inc., 635 F.Supp.3d 941 (C.D. Cal. 2022) .......... 9

Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429 (5th Cir. 2014) .......... 10

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) .......... 5

Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A., No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022) .......... 23

NT Cap. Mgmt. LLC v. Truist Bank, NA, No. 2:24-CV-09461-HDV-AJR, 2025 WL 1544123 (C.D. Cal. Mar. 24, 2025) .......... 14

Ochs v. PacifiCare of California, 115 Cal. App. 4th 782 (2004) .......... 25

Ostrich Int'l Co., Ltd v. Michael A. Edwards Grp. Int'l Inc., No. 2:21-cv-639-JVS-ASx, 2023 WL 4025870 (C.D. Cal. May 18, 2023) .......... 21

Pavlovich v. Superior Court, 29 Cal.4th 262 (2002) .......... 9

Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A., 352 F. Supp. 3d 1226 (S.D. Fla. 2018), aff'd, 795 F. App'x 741 (11th Cir. 2019) .......... 17, 18

Regatos v. N. Fork Bank, 257 F. Supp. 2d 632 (S.D.N.Y. 2003) .......... 18

Rouse v. Wachovia Mortg., FSB, 747 F.3d 707 (9th Cir. 2014) ..... 7

S&S Worldwide, Inc., 509 F. Supp. 3d 1154 (N.D. Cal. 2020) ..... 23

Schmitt v. Bank of Am., No. 1:24-CV-611, 2024 WL 4902416 (W.D. Mich. Nov. 26, 2024) ..... 8

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir. 2004) ..... 9

Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA, No. 2:21-cv-12835-ES-LDW, 2022 WL 16706948 (D.N.J. Oct. 3, 2022) ..... 13

Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A., No. 21-cv-380-JGB-SPx, 2021 WL 4805448 (C.D. Cal. July 15, 2021) ..... 20

Sheerbonnet, Ltd. v. Am. Express Bank Ltd., 951 F. Supp. 403 (S.D.N.Y. 1995) ..... 18

Shooter Pops LLC v. Wells Fargo Bank, N.A., 649 F. Supp. 3d 62 (E.D. Pa. 2023) ..... 23

Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA, No. 3:23-CV-2111-SAL, 2024 WL 503666 (D.S.C. Jan. 9, 2024) ..... 19

Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union, 133 F.4th 264 (4th Cir. 2025) (Wynn, J., concurring on basis that UCC's misdescription provision in 4A-207 "imposes a privity requirement") ..... 13

Thomas v. Corbyn Rest. Dev. Corp., 111 Cal. App. 5th 439 (2025) ..... 20, 21, 22

TME Enters., Inc. v. Norwest Corp., 124 Cal. App. 4th 1021 (2004) ..... 16, 17

Travers v. Louden, 254 Cal. App. 2d 926 (Ct. App. 1967) ..... 23

Valley Chili Props., LLC v. Truist Bank, 705 F. Supp. 3d 768 (W.D. Tex. 2023) ..... 14

Warren v. Fox Family Worldwide, Inc.,
328 F.3d 1136 (9th Cir. 2003) .......... 6

Zengen, Inc. v. Comerica Bank,
41 Cal. 4th 239 (2007) .......... 11, 15

Zhejiang Matrix SCM Co., LTD v. PNC Bank, Nat'l Ass'n,
No. CV 23-0979, 2024 WL 1096534 (E.D. Pa. Mar. 13, 2024) .......... 14

Zidell v. E. W. Bank,
No. 3:24-CV-2340-D, 2025 WL 919385 (N.D. Tex. Mar. 26, 2025) .......... 7

**Statutes**

31 U.S.C. §§ 5311 et seq. .......... 19

Cal. Civ. Proc. Code § 410.10 .......... 5

Cal. Civ. Proc. Code § 1061 .......... 25

Cal. Com. Code
§ 11103(a)(1) .......... 15
§ 11207 .......... *passim*
§ 11207(a) .......... 15, 16
§ 11207(b) .......... 12, 16
§ 11207(b)(1) .......... 12
§ 11207(b)(2) .......... 12
§ 11207(c) .......... 12, 13, 16
§ 11207(c)(2) .......... 12, 13
§ 11212 .......... 15

California Uniform Commercial Code Division 11 .......... 2, 14

N.Y.U.C.C. § 4-A-102 .......... 11

U.C.C. Article 4A .......... *passim*

U.C.C. § 4A-207 .......... 2, 14, 16, 19

U.C.C. § 4A-207(b) .......... 14

U.C.C. § 4a-507(a)(3) .......... 10

**Other Authorities**

FBI, Business Email Compromise (https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/business-email-compromise) .......... 1

Fed. R. Civ. Proc. 12(b)(2) .......... 5

Fed. R. Civ. Proc. Rule 12(b)(6) .......... 5

https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/business-email-compromise .......... 3, 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As described in the Complaint, plaintiffs Mags Global Capital LLC and Mozafar Maghsoudnia ("Plaintiffs") fell victim to a business email compromise ("BEC") scam—a type of cybercrime the FBI has repeatedly warned businesses to guard against by verifying payment requests ***before*** initiating wire transfers. See FBI, Business Email Compromise (https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/business-email-compromise). In December 2024, Plaintiffs entered into an agreement to purchase real estate in Newport Coast for over $46,000,000.

Shortly thereafter, Plaintiffs acknowledge that they received emails from a third party purporting to be the escrow company—Granite Escrow—requesting wire transfers of the purchase funds. Critically, ***Plaintiffs admit these emails had errors which should have alerted Plaintiffs to potential fraud***. Even though the transfers totaled over $45,000,000, ***Plaintiffs did not engage in any action to verify the wiring instructions with Granite Escrow***; instead, Plaintiffs admit that they followed these instructions and initiated three wire transfers to an account held at defendant Citibank, N.A ("Citi"). Rather than transfer funds to Granite Escrow, Plaintiffs sent the funds to a third party who absconded with the funds. While Plaintiffs' loss is unfortunate, there is no legal basis to shift their loss to Citi.

As a preliminary matter, this action must be dismissed because this Court cannot exercise personal jurisdiction over Citi. Citi is a national banking association with its headquarters, as designated by its articles of association, in South Dakota and its main office in New York. As such, there is no general personal jurisdiction over Citi in California. And because Plaintiffs do not allege that Citi directed any conduct toward California as it relates to Citi's acceptance of the wire transfers, there can be no specific jurisdiction.

Even if this Court were to address the merits, which it need not, Plaintiffs' claims fail as a matter of law. While Plaintiffs assert two claims against Citi, the sole theory of liability that Plaintiffs advance is that Citi improperly accepted the three wire transfers Plaintiffs admittedly sent to an account held at Citi. Plaintiffs assert that Citi's acceptance was improper because Citi allegedly "knew" that the intended recipient of the wire ("Granite Escrow") was not the same as the beneficiary identified ***by Plaintiffs*** using an account number ("Transpo Express"). But there is not a single specific allegation that Citi either processed the wires manually or actually knew that the intended recipient was different from the beneficiary identified by Plaintiffs by account number.

As Plaintiffs acknowledge, Article 4A of the Uniform Commercial Code (the "UCC"), adopted in California as Division 11 of the California Uniform Commercial Code ("Division 11"), and specifically Commercial Code § 11207 (based on UCC 4A-207), governs this exact issue. Article 4A was specifically enacted to govern wire transfers and allocate risk so that banks can guard and insure against potentially losses. Indeed, courts are required to strictly adhere to the UCC and any common law or other claims attempting to address a fund transfer governed by the UCC are preempted. Here, Section 11207 makes clear that Plaintiffs—who are not customers of Citi—simply cannot proceed against Citi.

Finally, and even if this Court were able to exercise jurisdiction and Plaintiffs were able to assert a claim against Citi, California law is clear that where a business falls victim to a BEC scam, the party in the best position to identify the scam bears the loss. Here, there is no doubt that Plaintiffs—who admittedly received an email that contained errors ***yet failed to take any action to verify the payment instructions***, were in the best position and must bear the loss (unless they are able to prevail against one of the other parties who they are admittedly pursing).

In sum, Plaintiffs were yet another victim of an unfortunate BEC scam. The FBI and other law enforcement agencies continue to warn businesses about BEC

scams and have long provided a list of steps to take to mitigate against this risk, including to "[v]erify payment and purchase requests ***in person if possible or by calling the person*** to make sure it is legitimate." https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/business-email-compromise (emphasis added). Here, Plaintiffs' Complaint describes a BEC scam, fails to describe what steps Plaintiffs took to safeguard themselves before wiring over $45 million based on email instructions they received, and fail to articulate why Plaintiffs' loss should be shifted to Citi.

As fully set forth herein, Citi respectfully requests that the Court dismiss the Complaint.

## II. ALLEGATIONS OF THE COMPLAINT

### A. Plaintiffs' Wire Transfers to the Transpo Express Account

In December 2024, Plaintiffs entered into an agreement to purchase real property located in Newport, California, for $46,345,284.50. (Compl. ¶ 30.) The seller selected Granite Escrow as the escrow company (id. at 31) and introduced the seller's escrow officer, Jenna Dannelly, to Plaintiffs by email (id. at 32).

On December 10, 2024, Plaintiffs allege that a third-party began impersonating Dannelly by using an email address that was ***nearly*** identical to her actual email containing the domain of @graniteescrow.com, instead using the spoofed domain of @granite**s**escrow**s**.com. (Id. at 33.) The third party provided wire instructions to Plaintiffs, which included the account number for the account held by Citi in the name of Transpo Express (the "Transpo Express Account"). (Id. at 34.)

Based on these instructions, Plaintiffs made three wire transfers to the Transpo Express Account. The first wire transfer was initiated by Mags Capital from its account at the Technology Credit Union ("Tech CU") in the amount of $26,137,740.50. (Id. at 36.) Maghsoudnia purportedly indicated in his payment order that Granite Escrow Settlement Services was the beneficiary and provided the

street address for Granite Escrow in Newport Beach, California. Plaintiffs allege that because of the amount of the payment, this transfer was "flagged as suspected fraud" but was reviewed and subsequently "verified" ***by a Tech CU employee***, Joe Anzalone. (Id. at 38.) The Complaint further alleges that another Tech CU employee, Alma Zamora, reviewed the payment order for a second time and then cleared the transfer for transmission to Citi. (Id.) The Complaint states that despite the mismatch between the name on the payment order (Granite Escrow) and the name of the account holder identified by account number (Transpo Express), $26,137,740.50 was transferred to the Transpo Express Account. (Id. at 39.)

Plaintiffs made two additional payments of $18,885,220.50 and $119,369.67 to the Transpo Express Account, which Plaintiffs allege Citi improperly accepted because of its "knowledge" of the mismatch between the name on the payment order (Granite Escrow) and the name of its account holder (Transpo Express). (Id. at 41-45.)

### B. Plaintiffs' Allegation of Actual Knowledge Are Solely Based on Public Statements and Unverified News Articles

Plaintiffs' allegation that Citi had knowledge of the mismatch is entirely based on public statements and media reports discussing tools adopted by Citi to monitor wire transfers for fraud, including Nasdaq Verafin, Feedzai, that Plaintiffs speculate would "trigger review by a Citi employee before suspected transactions can be processed." (Id. at 46.) Plaintiffs assert that in applying these tools (without any substantiation that the technology was applied here), warnings would arise when deposits were made into accounts identifying payees other than the account holder; a payment order exceeded specified thresholds; a payment was directed to a suspected money mule; and the address for the beneficiary did not match that of the account holder. (Id. at 47.) For this reason, Plaintiffs contend—again, without any specific allegations that any warnings or review occurred here—that the wire

transfers triggered warnings at Citi and should have been escalated for human review, but that Citi still failed to timely stop the orders. (Id. at 48-49.)

The Complaint alleges two claims against Citi: (1) violation of Commercial Code § 11207; and (2) declaratory judgment that Citi's acceptance of the wires was invalid.

## III. LEGAL STANDARDS

### A. Dismissal for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides that a complaint may be dismissed for lack of personal jurisdiction. "Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005) (quoting Chan v. Society Expeditions, 39 F.3d 1398, 1404-05 (9th Cir. 1994)). California's long-arm statute states that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, California's long-arm statute permits courts to exercise personal jurisdiction within the limits of due process. Daimler AG v. Bauman, 571 U.S. 117, 125 (2014).

### B. Dismissal for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when there is either a lack of cognizable legal theory, the absence of sufficient facts alleged under a cognizable legal theory, or where the allegations on their face "show that relief is barred" for some legal reason. Jones v. Bock, 549 U.S. 199, 215 (2007); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing and quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. And the court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (quotations and citation omitted).

## IV. ARGUMENT

### A. This Court Lacks Personal Jurisdiction Over Citi In this Matter.

Plaintiffs' Complaint must be dismissed for their failure to establish that Citi is subject to personal jurisdiction. Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two bases for exercising personal jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's contacts with the forum give rise to the claim in question. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414–16 (1984).

Importantly, plaintiff bears the burden of establishing personal jurisdiction. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) ("In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper"). To meet this burden, plaintiff must make a "prima facie showing of jurisdictional facts[.]" (Glob. Commodities Trading Grp. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101,

1106 (9th Cir. 2020) (citations omitted)). Plaintiffs have not established that this Court may exercise personal jurisdiction over Citi on either basis.

**1. Citi Is Not Subject To General Jurisdiction In California.**

General jurisdiction exists when defendant's contacts with the forum state are so "continuous and systematic" as to render the defendant essentially "at home" in that forum. Daimler AG v. Bauman, 571 U.S. 117, 128 (2014). It is undisputed that Citi is a national banking association which has its main office in South Dakota. (Compl. ¶ 7, alleging "CITIBANK, N.A., is a national banking association . . . with its main office as specified in its Articles of Association in Sioux Falls, South Dakota"). Therefore, Citi's "home" for purposes of general jurisdiction is South Dakota, not California. Zidell v. E. W. Bank, No. 3:24-CV-2340-D, 2025 WL 919385, at *3 (N.D. Tex. Mar. 26, 2025) (because Citi is headquartered in South Dakota, and its main office is in New York, "Citibank is 'at home' and subject to general personal jurisdiction in New York and South Dakota"); Rouse v. Wachovia Mortg., FSB, 747 F.3d 707, 708 (9th Cir. 2014) ("a national bank is 'located' only in the state designated as its main office."); Haring v. Wells Fargo Bank N.A., No. C 18-3310 SBA, 2018 WL 10471109, at *4 (N.D. Cal. Oct. 17, 2018) (a national banking association is only at home in the state where it is based).

Plaintiffs assert that "[t]his Court has personal jurisdiction over Citibank because Citibank regularly conducts business within this judicial district, including through numerous branches and its offices in San Jose, California." (Compl. ¶ 11.) But Courts have made clear that general jurisdiction does not extend to a national bank merely because it operates branches in a forum state. See, e.g. Zidell, 2025 WL 919385 at *3 (declining to exercise general jurisdiction over Citi in Texas in case arising from a wire transfer, even where Citi made a production of relevant documents from a San Antonio office, because its headquarters are located in South Dakota and main office in New York); Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (bank's operation of branches in the forum state does not

necessarily subject it to general jurisdiction in the state); Legends Title, LLC v. Cap. One, Nat'l Ass'n, 659 F. Supp. 3d 637, 644 (D. Md. 2023) (banks' substantial business in Maryland, and having branches and offices in Maryland, did not suffice to permit assertion of general jurisdiction). This is because, as the Supreme Court has made clear, a "corporation that operates in many places can scarcely be deemed at home in all of them." Daimler, 571 U.S. at 139 n.20.

In Schmitt v. Bank of Am., No. 1:24-CV-611, 2024 WL 4902416 (W.D. Mich. Nov. 26, 2024), plaintiff similarly sued a national banking association to recover funds after plaintiff initiated a wire transfer based on purportedly fraudulent wire instructions received when attempting to purchase property in Nevada. Although plaintiff asserted that general jurisdiction was proper because the national bank defendant "maintains bank branches," has "physical locations and services like ATMs, extended hours, banking specialists, and tellers" in the forum state, and offers mobile and online banking services to residents, the contacts were not so perpetual as to render the national bank defendant essentially "at home" in the state. Id. at *5. The court noted that imposing jurisdiction would conflict with the "bedrock general jurisdiction principle" if the court were to find the national bank defendant at home, it would imply that the bank was "also at home in every other state in which it operates." Id. at *5-*6.

Relevant here, courts have also rejected customer-initiated wire transfers as a basis to confer general jurisdiction. See Dtex, LLC v. BBVA Bancomer, S.A., 405 F. Supp. 2d 639, 645 (D.S.C. 2005), aff'd sub nom. Dtex LLC v. BBVA Bancomer, 214 F. App'x 286 (4th Cir. 2007) ("As federal courts have held on many occasions, [ ] customer-initiated bank-to-bank wire transfers do not establish the 'continuous and systematic' purposeful presence necessary to establish personal jurisdiction over a foreign bank"); Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 764 (S.D.N.Y. 2004) ("[T]he norm of 'fundamentals of substantial justice' does not accord with a finding of minimum contacts where a non-resident bank

engages in wire transfers . . . on behalf of its clients"). Plaintiffs' Complaint is devoid of any facts demonstrating this an "exceptional case" where a nonresident bank like Citi should be subject to general jurisdiction. Accordingly, the Court does not have general jurisdiction over Citi.

**2. Because Citi Did Not Direct Any Activity Towards California, It Is Also Not Subject To Specific Jurisdiction.**

Specific jurisdiction allows a court to exercise jurisdiction over a defendant if the case arises out of certain forum-related acts. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000); Pavlovich v. Superior Court, 29 Cal.4th 262, 268 (2002). The Ninth Circuit has established a three-prong test: (1) a defendant must "purposefully direct his activities" or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum [state];" (2) the plaintiff's claim must be "one which arises out of or relates to the defendant's forum-related activities;" and (3) the exercise of personal jurisdiction over the defendant must "comport with fair play and substantial justice, i.e. it must be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). In conducting a "minimum contacts" analysis, the ***defendant's conduct*** must form the necessary connection with the forum state. See Moledina v. Marriott International, Inc., 635 F.Supp.3d 941, 949 (C.D. Cal. 2022).

The Complaint alleges that Plaintiffs fell victim to a fraud involving instructions to send wires to an account started and maintained at a Citi branch in Hoboken, New Jersey. (Compl. ¶¶ 25-27.) Plaintiffs allege that an individual went to Citi's Hoboken branch to present identification and documents to open the Transpo Express Account. (Id.). Thus, the only alleged conduct of Citi—the opening of the Transpo Express Account and Citi's acceptance of wires into a New Jersey account—***occurred outside of California***. Presumably, Plaintiffs have filed suit in this Court because Plaintiffs reside in and maintain their principal place of business in Santa Clara County, California, and Plaintiffs initiated the at-issue wire

transfers in California. (Compl. ¶¶ 5-6.) There can be no credible argument that the Complaint establishes specific jurisdiction.

Instead, it is clear that Plaintiffs initiated this lawsuit in this Court based on Plaintiffs' own conduct. But courts are clear that ***customer-initiated*** wire transfers do not establish the minimum contacts necessary for specific jurisdiction, as the jurisdictional inquiry focuses on intentional acts by defendants. See, e.g., Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014) (plaintiffs' execution of a contract, initiation of wire transfers, and communications from Texas to foreign bank defendant does not create general or specific jurisdiction, because the relationship with the forum state must arise out of contacts that the "defendant *himself*" creates with the forum state); Dtex, LLC , 405 F. Supp. 2d at 645 (D.S.C. 2005) (defendant bank's "non-purposive role in wire transfers" from customer accounts to accounts at banks in the forum state are insufficient for jurisdiction).

Because Plaintiffs have not, and cannot, allege that personal jurisdiction exists, the Complaint must be dismissed.

**B. The Complaint Fails to State a Claim for Violation of Division 11.**

UCC 4a-507(a)(3) expressly provides that "[t]he issue of when payment is made pursuant to a funds transfer by the originator [here, Plaintiffs] to the beneficiary is governed by the law of the jurisdiction in which the beneficiary's bank [Citibank] is located." Thus, Citi's receipt of a payment order and crediting of an account in New Jersey is governed by New Jersey law. Under New Jersey law, the New Jersey Supreme Court has held that "Article 4A comprehensively governs the rights and remedies of parties affected by funds transfers." ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 518 (2014) (further holding that "Article 4A preempted any common law negligence claim arising 'from a setting directly addressed by Article 4A'"); see also Harborview Cap. Partners, LLC v. Cross River Bank, 600 F. Supp. 3d 485, 496-497 (D.N.J. 2022) (holding common law claims for breach of contract, negligent misrepresentation, and other claims based on bank's

alleged acceptance of unauthorized wire transfers based on instructions by third-party hacker are preempted by the UCC). As explained above, this Court lacks jurisdiction over Citi. Although Plaintiffs cannot state a viable claim against Citi, if Plaintiffs re-filed this case elsewhere, their claims would need to be decided under New Jersey law—specifically under UCC Article 4A as adopted in New Jersey. Even if California law governed this case, and it does not, Plaintiffs' claim for violation of Division 11, Section 11207 still fails as a matter of law.

**1. Article 4A Is A Comprehensive Scheme Which Was Adopted To Allocate Risk Involving Funds Transfers.**

As the Supreme Court of California recently explained, Article 4A was drafted "to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment." Zengen, Inc. v. Comerica Bank, 41 Cal. 4th 239, 252 (2007) (quoting Code Comment to section 4A-102). The Supreme Court went on to explain that "[i]n the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately." Id. As relevant here, "[t]his consideration is particularly important given the very large amounts of money that are involved in funds transfers." Id. Accordingly, courts routinely interpret and apply Article 4A consistent with its goals, including "to promote certainty and finality." Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 102 (2d Cir. 1998) ("One of Article 4-A's primary goals is to promote certainty and finality so that 'the various parties to funds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures and to price funds transfer services appropriately.'") (quoting N.Y.U.C.C. § 4-A-102, cmt.) (alteration in original).

**2. An Originator Cannot Sue The Beneficiary's Bank.**

The UCC sets forth the loss shifting mechanism with respect to a wire transfer that identifies different persons by name and account number. Each party's role in the process is critical. Here, Plaintiffs are the originator and Citi is the beneficiary's bank. Because there is no privity between an originator and a beneficiary's bank, the UCC is clear that Plaintiffs cannot bring a claim for an alleged violation of Section 11207(b) against Citi.

California Commercial Code § 11207(b)(1) provides that if a beneficiary's bank does not know that the name and account number on a payment order refer to different persons, it may rely on the account number only as proper identification of the beneficiary. As explained below, this subsection applies because Plaintiffs fail to allege any specific allegations of Citi's knowledge of the mismatch here.

Section 11207(b)(2) states that if the beneficiary's bank knows that the payment order identifies different persons by name and account number, "no person has rights as beneficiary, ***acceptance of the order cannot occur***." (Emphasis added). Section 11207(b)(2) is silent as to whether the originator (Plaintiffs) are ***required to pay the order as written***.

Critically, Section 11207(c)(2) sets forth an entirely different loss shifting mechanism. Section 11207(c) states that if the originator's payment order identifies different persons by name and account number (as Plaintiffs admit here), the payment order is accepted (as Plaintiffs admit here), and the beneficiary's bank pays the person identified by number (without knowledge of a mismatch), then an originator who is not a bank (like Plaintiffs, here) "is ***not obliged to pay its order"*** unless certain disclosures were made ***to the originator by the originator's bank***. (Emphasis added).

These two loss mechanisms are drastically different. Under Section 11207(b)—the sole provision at issue here—when the originator creates a payment order that contains an inconsistency (like the orders here), a beneficiary's bank cannot accept the order if it knows of the inconsistency. Stated differently, the

originator who created the inconsistent order is not insured against its own error and ***the UCC does not relieve the originator of its obligation to pay the order***.

On the other hand, Section 11207(c) permits an originator to not pay the order but only where the originator was not provided disclosures by its bank. The UCC thus prescribes two separate loss mechanisms. Read together, these provisions make clear that any recourse available to an originator runs through its own bank, not against a beneficiary bank.[1]

Here, by suing Citi to recover the funds, Plaintiffs are attempting to mix these two provisions. But every Court of Appeal—and New Jersey courts which, as discussed above, govern this dispute—to address this issue has made clear that the originator may not pursue the beneficiary's bank due to a lack of privity and the clear loss mechanisms set forth in the UCC. See, e.g., Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 101 (2d Cir. 1998); Approved Mortg. Corp. v. Truist Bank, 106 F.4th 582, 591 (7th Cir. 2024) (concluding Article 4A's drafters intended to impose a privity requirement to sue under section 207, as it advances the UCC drafters' goal of promoting "certainty and finality" so that funds transfers parties can predict risk and make decisions based on these known risks); Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union, 133 F.4th 264, 279 (4th Cir. 2025) (Wynn, J., concurring on basis that UCC's misdescription provision in 4A-207 "imposes a privity requirement"); Scura, Wigfield, Heyer, Stevens & Cammarota, LLP v. Citibank, NA, No. 2:21-cv-12835-ES-LDW, 2022 WL 16706948, at *4-5 (D.N.J. Oct. 3, 2022) (dismissing section 4A-207 claim brought by a non-customer

[1] Under the UCC, Plaintiffs can either pursue their own banks if they did not receive proper disclosures that payment might be made by the beneficiary bank based on an account number (as mandated by section 11207(c)(2)), or the originators' banks can pursue the beneficiary bank if the beneficiary bank knew about the mismatch. As set forth herein, however, Plaintiffs have not plausibly alleged Citibank's actual knowledge of the mismatch. Alternatively, Plaintiffs can pursue the intended beneficiary of these transfers, Granite Escrow, if that company was at fault (e.g. it did not maintain systems that safeguarded against email hacking, interception of company communications, and other cybercriminal activity), or the fraudsters that actually caused Plaintiffs' losses by soliciting the wire transfers and absconding with Plaintiffs' funds.

against Citi, holding that Article 4A does not create obligations running to parties who are not in privity with the beneficiary bank). In Grain Traders, Inc., the Second Circuit confirmed that a sender of payment's order action under Article 4–A against Citibank was barred, as the sender may only seek a refund from the bank "to whom the sender had issued a payment order." 160 F.3d at 102. To allow otherwise would enable a party to, "in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities[.]" Id.[2]

Because Plaintiffs and Citi are not in privity, Plaintiffs' claim fails.

**3. Wires Are Permitted To Be Paid Based on Account Number.**

Even if Plaintiffs could pursue Citi, which they cannot, Citi was permitted to process the wires using account number alone. "Article 4A of the UCC governs fund transfers, which includes wire transfers . . . [and] has been adopted in California as Division 11 of the California Uniform Commercial Code."[3] Grand Bayman Belize, Ltd. v. Wells Fargo & Co., 514 F. Supp. 3d 1188, 1192 (C.D. Cal.

---

[2] The majority of district courts considering this issue have likewise adhered to the privity requirement. Zhejiang Matrix SCM Co., LTD v. PNC Bank, Nat'l Ass'n, No. CV 23-0979, 2024 WL 1096534, at *4 (E.D. Pa. Mar. 13, 2024) ("[b]ecause Plaintiff is neither a customer of Defendant nor in privity with Defendant, the Court finds any claim under Section 4A-207(b) against Defendant would necessarily fail"); AmpliTech Grp., Inc. v. Truist Bank, 746 F. Supp. 3d 1384, 1387 (S.D. Fla. 2024) (as a matter of first impression, privity is required for claims under Florida's iteration of UCC § 4A-207); Valley Chili Props., LLC v. Truist Bank, 705 F. Supp. 3d 768, 773 (W.D. Tex. 2023) (even if defendant had actual knowledge of the mismatch and could not rightfully accept the wire transfer pursuant to 4A-207(b)(2), plaintiff had no right to recover its funds directly from the beneficiary bank and should have instead pursued its own bank). Contra, NT Cap. Mgmt. LLC v. Truist Bank, NA, No. 2:24-CV-09461-HDV-AJR, 2025 WL 1544123, at *4n.5 (C.D. Cal. Mar. 24, 2025).

[3] Pursuant Section 11104(a), a "funds transfer" is defined as:

> [T]he series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

2021) (alteration in original) (quoting Chino Com. Bank, N.A. v. Peters, 190 Cal. App. 4th 1163, 1173 (2010)), aff'd sub nom. Grand Bayman Belize, Ltd. v. Wells Fargo Bank, N.A., No. 21-55146, 2022 WL 171937 (9th Cir. Jan. 19, 2022) ("Grand Bayman II"). Division 11 "provide[s] a detailed scheme for analyzing the rights, duties and liabilities of banks and their customers in connection with the authorization and verification of payment orders."[4] Zengen, 41 Cal. 4th at 251-52. Under Division 11, "[a] receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this division or by express agreement." Cal. Com. Code § 11212. Further, a receiving bank's "liability is limited to that provided in this division." Id. Here, the Complaint does not allege any express agreement between Plaintiffs and Citi. (See generally, Compl.) Thus, Plaintiffs' claims are exclusively governed by Division 11 and specifically Section 11207.

Section 11207(a) provides that "[s]ubject to subdivision (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a ***nonexistent or unidentifiable*** person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur." Cal. Com. Code § 11207(a) (emphasis added). Here, the account number specified in Plaintiffs' wire instructions belonged to an existing account at Citi, prompting Plaintiffs to direct payment to the account number corresponding with the Transpo Express Account. (Compl. ¶ 37). Thus, Section 11207(a) is inapplicable.

Section 11207(b) applies when—like here—"a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying

---

[4] A "payment order" is defined, in pertinent part, as "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in a record,, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary …." Cal. Com. Code § 11103(a)(1). "A wire transfer is a 'payment order.'" Chino Com. Bank, 190 Cal. App. 4th at 1174.

or bank account number and the name and number identify different persons." Id. at § 11207(b). In this scenario, Section 11207(b) provides that:

> (1) Except as otherwise provided in subdivision (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. **The beneficiary's bank need not determine whether the name and number refer to the same person.**

Id.[5] (emphasis added). In other words, "[S]ection 11207(b) plainly permits beneficiary banks to accept wire transfers where . . . there is a mismatch between the name and number [on the payment order]—so long as the number identifies an account held at the bank, and the bank has no actual knowledge of the mismatch." Grand Bayman II, 2022 WL 171937, at *1.

As explained in the official comment to UCC § 4A-207, "[a] very large percentage of payment orders . . . are processed by automated means using machines" which results in "substantial economies of operation and [reduces] the possibility of clerical error . . . ." U.C.C. § 4A-207 cmt. 2. While it is possible for a beneficiary bank to determine whether a name and account number match, imposing a duty to make that determination would mean that "the benefits of automated payment are lost." Id. In other words, Section 11207 allows, and even encourages, banks to automate the processing of payment orders and rely solely on account numbers to identify beneficiaries.

**4. Plaintiffs Fail To Allege That Citi Had Actual Knowledge.**

Although the Court need not address the merits of Plaintiffs' claim as set forth above, even if this Court were to consider Plaintiffs' claim, it likewise fails. The UCC contains a single exception to the rule permitting a beneficiary's bank to

[5] Section 11207(c) is inapplicable here as it governs the obligations between Plaintiff and its bank. TME Enters., Inc. v. Norwest Corp., 124 Cal. App. 4th 1021, 1031 n.13 (2004).

process a wire based on account number alone. The exception applies only where the beneficiary's bank has ***actual*** knowledge of a mismatch ***at the time of payment***. "The standard is actual knowledge at the time of payment. Without this knowledge, [a] [d]efendant [is] free to rely only upon the account number." Metro Denver Title, LLC v. JPMorgan Chase Bank, N.A., No. 21-cv-02705-RMR-SKC, 2022 WL 17547943, at *4 (D. Colo. Aug. 16, 2022), report and recommendation adopted sub nom. Metro Denver Title LLC v. JPMorgan Chase Bank, NA, No. 21-cv-02705-RMR-SKC, 2022 WL 17547945 (D. Colo. Sept. 1, 2022).

Importantly, ***actual*** knowledge is "not constructive knowledge, and is determined at the time of payment." First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank, 215 F.3d 1147, 1153 (10th Cir. 2000); TME Enters., 124 Cal. App. 4th at 1033 (constructive knowledge is insufficient to establish a violation of Section 11207); Grand Bayman I, 514 F. Supp. 3d at 1194 ("constructive knowledge does not equal actual knowledge"). "A party claiming that a bank actually knew about a name discrepancy between wire instructions and the transferee account's owner must plead particular facts supporting the claim of actual knowledge." Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n, 688 F. Supp. 3d 608, 613 (N.D. Ohio 2023), aff'd sub nom. Kent Grp. Partners, LLC v. Citizens Bank, NA, No. 23-3743, 2024 WL 945239 (6th Cir. Mar. 5, 2024).

Courts have consistently interpreted actual knowledge as requiring a showing that an individual was "**consciously aware** that the name and account number did not match" at the time of payment. Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A., 352 F. Supp. 3d 1226, 1233 (S.D. Fla. 2018), aff'd, 795 F. App'x 741 (11th Cir. 2019). In Peter E. Shapiro, P.A., for instance, the court held that, even though a Wells Fargo employee "reviewed the transaction for sanctions compliance" after the wire transfer was processed according to an automated process, and an "***audit report noted a possible name mismatch***," no person "look[ed] at whether the name and account number matched," and therefore there was no evidence that Wells

Fargo had actual knowledge of the mismatch. 352 F. Supp. 3d at 1232-33 (emphasis added). Even further, allegations that a bank "knew" based on data stored in its computer system are insufficient to allege actual knowledge. See Langston & Langston, PLLC v. SunTrust Bank, 480 F. Supp. 3d 737, 744 (S.D. Miss. 2020) ("Data stored in a computer system does not constitute actual knowledge, even if inspection of the data would have revealed a misdescription.").

Here, Plaintiffs allege, ***on information and belief***, that payment orders for the wire transfers "triggered Citibank's fraud detection systems, which led to review by one or more Citibank employees such that Citibank had knowledge of the [names] mismatch," and concluding based on those facts that Citi had knowledge of the mismatch. (Compl. ¶ 52.) Absent particularized factual allegations detailing the basis of Plaintiffs' information and belief, such allegations fail to establish actual knowledge. See Abe v. AFCH, Inc., No. 2:20-cv-08193-ODW-PVCx, 2021 WL 2209309, at *6-7 (C.D. Cal. June 1, 2021) (plaintiff's numerous allegations based on "information and belief" were unsupported by any factual basis, and plaintiff's allegations of actual knowledge and other elements of claims lacked sufficient particularity and particularized factual support). Plaintiffs' citation to public statements and media reports lack any direct tie to the wires at issue here. Allegations that Citi had systems theoretically capable of detecting potential discrepancies fall far short of establishing that Citi ***actually knew*** of a name mismatch ***in processing each of Plaintiffs' orders***. As a result, Plaintiffs' claims fails. See Regatos v. N. Fork Bank, 257 F. Supp. 2d 632, 647 (S.D.N.Y. 2003) (U.C.C. Art. 4A imposes liability only when the bank "actually knows" of a name/number mismatch); Sheerbonnet, Ltd. v. Am. Express Bank Ltd., 951 F. Supp. 403, 409 (S.D.N.Y. 1995) (same); Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 20-cv-8231, 2021 WL 4782278, at *6 (C.D. Cal. Aug. 4, 2021) (dismissing claim where plaintiff alleged the bank "should have known" of the discrepancy, because constructive knowledge is not enough); GN Pro Grp., LLC v.

Well Done ASAP, LLC, 764 F. Supp. 3d 757, 762 (N.D. Ill. 2025) (dismissing UCC section 4A-207 where complaint contains no non-conclusory factual allegations showing that beneficiary bank had actual knowledge of the mismatch between the intended beneficiary and account number); Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA, No. 3:23-CV-2111-SAL, 2024 WL 503666, at *3 (D.S.C. Jan. 9, 2024) (dismissing complaint that failed to allege that bank had actual knowledge and holding that Citi "had no obligation to verify the name on the order and on the account matched."); Meridian Growers Processing, Inc., 2024 WL 4333146, at *4 (dismissing complaint that failed to adequately allege that bank had actual knowledge of an inconsistency).

**5. Any Allegations About Obligations Pursuant to the Bank Secrecy Act, and Associated Internal Bank Policies and Procedures, Are Insufficient to Impute Actual Knowledge.**

In addition to Citi's purported implementation of transaction monitoring technologies, Plaintiffs also make offhand reference to the Bank Secrecy Act, 31 U.S.C. §§ 5311 et seq. (the "BSA"), and Citi's presumed "require[ments] by law to monitor all transactions in in an effort to detect suspicious and fraudulent transactions." (Compl. ¶ 23).

To the extent that Plaintiffs are trying to assert that Citi must have had knowledge of the mismatch because of its obligations to comply with the BSA, or any corresponding internal policies and procedures aimed at detection and prevention of money laundering, these assertions "are insufficient to plausibly allege actual knowledge of a discrepancy absent an indication that these [policies and procedures] led Citibank to **discover** the inconsistency" when the wire transfer was processed. Meridian Growers Processing, Inc. v. J.P. Morgan Chase Bank, N.A., No. 1:24-CV-00781-KES-EPG, 2024 WL 4333146, at *4 (E.D. Cal. Sept. 27, 2024) (emphasis added); Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A., No. 21-cv-380-JGB-SPx, 2021 WL 4805448, at *2 (C.D. Cal. July 15,

2021) (dismissing claim asserted by originator against beneficiary's bank (here, Citi) for an alleged violation of Section 11207 based on bank's acceptance of wire transfer where beneficiary name and account number did not match). The Court should similarly reject any allegations of constructive knowledge based on Citi's presumed BSA obligations and internal bank policies.

**6. Courts Are Clear That A Business That Fails To Detect A BEC Cannot Shift Its Loss To The Bank That Merely Processed The Businesses' Request.**

Plaintiffs' attempt to pursue a claim against Citi—a bank with which they lack privity—and pull from generic public statements in an attempt to manufacture a claim that Citi had ***actual*** knowledge at the time it processed the wires is no mistake. This is because courts are clear that when confronted with who should bear the loss when a business falls victim to a BEC scam, the entity in the best position to identify the fraudulent wire instructions bears the loss. As Plaintiffs concede, they received e-mailed instructions from an e-mail address that was different from the actual email address of the escrow company. (Compl. ¶¶ 33-35.) Given Plaintiffs failure to address it, it is also clear that Plaintiffs failed to take any action to call and verify the instructions. As the FBI cautioned, businesses should "[v]erify payment and purchase requests ***in person if possible or by calling the person*** to make sure it is legitimate." https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/business-email-compromise (emphasis added).

Indeed, the only California Court of Appeal to address the risk of loss confirms that Plaintiffs, here, must bear the risk of loss. In Thomas v. Corbyn Rest. Dev. Corp., 111 Cal. App. 5th 439, 443 (2025), the law firm of a personal injury defendant wired funds after falling victim to a BEC scam that were never received by the plaintiff's law firm. The parties engaged in litigation over which law firm

should bear the loss.[6] In concluding that defendant's firm that initiated the wire transfer should bear the loss, the Court identified all the ways defendant's law firm could have identified the BEC scam. See Thomas, 111 Cal. App. 5th at 453–55 (risk of loss should be shifted to defendants because they did not address numerous anomalies surrounding the wire instructions, did not conduct follow-up calls after determining that the phone number provided was inoperable, failed to scrutinize the spoofed email to notice the email address omitted letters in email address and domain, and overlooked that the imposter carelessly sent two identical requests for wire instructions within a matter of minutes); Ostrich Int'l Co., Ltd v. Michael A. Edwards Grp. Int'l Inc., No. 2:21-cv-639-JVS-ASx, 2023 WL 4025870, at *5 (C.D. Cal. May 18, 2023) (holding that the party that failed to carefully evaluate email addresses and telephone opposing counsel to confirm wiring instructions in the face of multiple, conflicting instructions could have more easily avoided the loss); Jetcrete N. Am. LP v. Austin Truck & Equip., Ltd., 484 F. Supp. 3d 915, 920 (D. Nev. 2020) (finding that while the email account hack "created the scenario for the loss," the buyer "was in the best position to prevent the loss by taking the reasonable precaution of verifying the wiring instructions by phone"); Arrow Truck Sales, Inc. v. Top Quality Truck & Equip., Inc., No. 8:14-CV-2052-T-TGW, 2015 WL 4936272, at *6 (M.D. Fla. Aug. 18, 2015) (holding that the recipient of "e-mails containing conflicting wire instructions" who did not call "to confirm or verify the correct wire instructions" failed to exercise reasonable care). The facts are identical here, as Plaintiffs concede the email they received had errors and they made no efforts to verify the instructions with the escrow company. In conclusion, the Court of Appeal noted as follows:

---

[6] Citi received the wire transfer at issue. (Compl. ¶¶ 39, 44.) Defendant's counsel initiated a lawsuit against Citi based on the same allegations asserted by Plaintiffs here. Of course, the court dismissed those claims.

> Innovation in commerce makes financial transactions more efficient and convenient. At the push of a button, money moves around the world almost instantly. Criminals have likewise invented new ways to exploit these advancements — making the ability to remotely and rapidly transfer significant amounts of money now come with a risk that a criminal will exploit the convenience of remoteness by impersonating a party to the transaction and diverting the funds, often irretrievably. As cases show, criminals do this in a variety of ways, including by hacking a party's authentic email account or by using a spoofed email account that closely resembles a party's authentic account. The antidote to these innovative fraudulent schemes may involve sophisticated encryption and digital safeguards (e.g., multifactor authentication), or it may sometimes be as old-fashioned and simple as picking up the phone and calling opposing counsel at a verified phone number, or meeting face-to-face to confirm the ***identity of one's counterpart and the validity of the transaction details. Either way, this case demonstrates that parties to modern, high-tech financial transactions must remain vigilant in ensuring they are dealing with their authentic peer. Failing to do so may be at their own financial peril.***

Thomas, 111 Cal. App. 5th at 458-459 (emphasis added.)

Indeed, Citi is one step removed from this analysis as it was not a party to any of the emails and simply processed wires exactly how Plaintiffs admit they instructed their own banks to pay. Courts are unanimous in holding that as between the business who fell victim to the BEC scam and the beneficiary's bank which accepted the admittedly accurate wire, the business bears the loss. See, e.g., Cap. Express Lines, Inc. v. JPMorgan Chase Bank, N.A., No. 2:24-CV-01639-DAD-DB, 2025 WL 2307899, at *4 n.1 (E.D. Cal. Aug. 11, 2025) (dismissing UCC claim and holding that the UCC "embodies the legislature's choice to immunize banks from liability for the actions of third-party fraudsters except in limited circumstances. Still, although the remaining choices are problematic for both business and practical reasons, plaintiff may be able to recover the funds from parties other than defendant bank."); Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A., No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022) (plaintiff business's negligence claim was

preempted by Article 4A, and plaintiff's claims additionally failed because hacker was an intervening cause and absolved the bank of any liability); AlphaVets, Inc. v. JPMorgan Chase Bank, N.A., 651 F. Supp. 3d 810, 822 (D.S.C. 2023) (dismissing claims of plaintiff business that was duped by email spoofer into transferring funds to fraudulent account, as bank did not owe plaintiff a legal duty, and fraudster was intervening cause that insulated bank from liability for negligence); Shooter Pops LLC v. Wells Fargo Bank, N.A., 649 F. Supp. 3d 62 (E.D. Pa. 2023) (dismissing case against bank filed by business that sent two wire transfers in response to spoofing email, based on court's findings that bank did not owe plaintiff a duty of care); S&S Worldwide, Inc., 509 F. Supp. 3d 1154 (N.D. Cal. 2020) (dismissing all claims by business against bank, arising from scheme in which hacker intercepted emails and impersonated vendor to induce fraudulent wire transfer). This Court should decline to permit Plaintiffs to proceed in attempting to shift their loss to Citi.

### C. Plaintiffs Fail to State a Claim for Declaratory Relief

Plaintiffs' claim for a declaratory judgment also fails, in multiple respects. It is well-established that declaratory relief operates ***prospectively,*** rather than redress past wrongs; it serves to set controversies at rest before they lead to repudiation of obligations, and is a "remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." Travers v. Louden, 254 Cal. App. 2d 926, 931 (Ct. App. 1967); see also Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th 872, 909 (2013). Declaratory relief "afford[s] a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." Fox Paine & Co., LLC v. Twin City Fire Ins. Co., 104 Cal. App. 5th 1034, 1052-3 (2024), quoting Gen. of Am. Ins. Co. v. Lilly, 258 Cal. App. 2d 465, 450 (Ct. App. 1968). "The availability of ***another form of relief*** that is adequate ***will usually justify refusal to grant*** declaratory relief." Id. (emphasis added), quoting Girard v. Miller, 214 Cal. App. 2d 266, 277 (Ct. App. 1963).

As admitted in Plaintiffs' Complaint, this claim concerns past conduct, rather than asking the court for prospective relief to declare the parties' future rights. Plaintiffs seek a determination that Citi "acceptance of the Tech CU Payment Order and the Morgan Stanley Payment Orders could not occur under Section 207(b)(2)," and that "no person has rights as a beneficiary of the Tech CU Payment Order and the Morgan Stanley Payment Orders, and that acceptance of the . . . . [payment orders] could not occur"—all relating to wire transfers already made. (Compl., ¶¶ 56-58, Prayer for Relief.)

Further, there is no "repudiation of obligations" with respect to any contract or written instrument, "invasion of rights or commission of wrongs," or "actual controversy" between Plaintiffs and Citi that would entitle Plaintiffs to a grant of declaratory relief. Gafcon, Inc. v. Ponsor & Assocs., 98 Cal. App. 4th 1388, 1403 (2002). There is no allegation that Citi currently holds the funds that were transferred or that it has custody of any funds belonging to Plaintiffs. Instead, Plaintiffs are requesting Citi to pay them money damages, interest as permitted by law, and attorneys' fees and the costs of suit. (Compl., Prayer for Relief.) Absent such allegations, there is no existing dispute over the ownership or possession of funds between Plaintiffs and Citi, and thus no present, actual controversy that can be the basis for declaratory relief.

Moreover, this claim is redundant of Plaintiffs' underlying section 11207 claim. Plaintiffs' declaratory relief claim merely seeks a declaration based on the same alleged facts and legal theories for their primary section 11207 claim, which fails because Citi was allowed to process the wire transfers based on solely on the account number listed in Plaintiffs' payment orders, and Plaintiffs have failed to plausibly allege the Citi had actual knowledge of any discrepancies at the time of payment. Declaratory relief would not therefore be "necessary or proper" pursuant to Code of Civil Procedure § 1061 and this claim should also be dismissed. See Ochs v. PacifiCare of California, 115 Cal. App. 4th 782, 794 (2004) (dismissing

cause of action for declaratory relief that was "wholly derivative" of other claims); Ball v. FleetBoston Fin. Corp., 164 Cal. App. 4th 794, 800 (2008) ("where a trial court has concluded the plaintiff did not state sufficient facts to support a statutory claim and therefore sustained a demurrer as to that claim, a demurrer is also properly sustained as to a claim for declaratory relief which is "wholly derivative" of the statutory claim).

In addition to this claim being redundant, Plaintiffs have already concurrently requested money damages, which are an adequate remedy for Plaintiffs' transferred funds. Accordingly, Plaintiffs' claim for declaratory judgment must be dismissed. Jolley v. Chase Home Fin., LLC, 213 Cal. App. 4th 872, 909 (2013) (declaratory relief not necessary or proper where it was repetitive of other claims and money damages were an adequate remedy, so that plaintiff with a ripe cause of action for money ***must*** seek damages and not declaratory relief).

### D. The Complaint Should Be Dismissed Without Leave to Amend.

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). Plaintiffs admittedly sent the wire transfers to an account held at Citi. Though Plaintiffs allege the wire instructions it received were fraudulent, there is no basis to shift Plaintiffs' loss to Citi. As set forth above, there simply is no way to amend the Complaint such that a viable claim could be asserted against Citi.

## V. CONCLUSION

For the foregoing reasons, Citi requests that this Court grant its Motion to Dismiss in its entirety and dismiss Plaintiffs' claims without leave to amend.

Dated: October 10, 2025

MORGAN, LEWIS & BOCKIUS LLP

By */s/ Arjun Rao*
Arjun P. Rao
Marcos Sasso
Christina Chen
Attorneys for Defendant
CITIBANK, N.A.